We are taking the third case on this morning's calendar on the briefs without oral argument. So we will now move on to case number four, James Hanson v. United States. James Hanson v. United States. Thank you, Your Honor. May it please the Court. Edward DeMolin for Petitioner James Hanson. The central issue in this case is whether Mr. Hanson should be classified as a career offender, and the government now concedes that he should not. None of the government's other procedural arguments should bar Mr. Hanson's relief. First, this petition is timely. The Supreme Court's opinion in Mathis created a new right that changed the class of statutes that are predicates for the career offender enhancement. Could we stop on that for a moment? I mean, as you've, I think, I think I just heard you concede that there are a number of procedural hurdles that Mr. Hanson is going to have to clear if we can finally get to that last point on which there doesn't seem to be any disagreement. That may sound awful, except that there are interests in our system in finality. There are particularly restrictions on one's ability to obtain collateral relief. So in Mathis, as the government has pointed out, we certainly, I would agree with you, that we certainly gain much more insight into the difference between elements and means than we had had before. So many of us people toiling here in the fields, you know, thought that Mathis was a very important case. But first of all, that's a matter of statutory interpretation. And secondly, the Supreme Court itself in Mathis says on a number of occasions, we're just applying the rules that we've applied all along. Now, maybe that was a rhetorical flourish. I don't know. But we, that's what they said. So how can we say, actually, you weren't Supreme Court? You have so fundamentally changed the law here that the one-year statute began running again. Your Honor, I take the point about the rhetorical flourishes, and that is precisely what I would call them. At no point in the opinion did I understand the Supreme Court to have been ruling on the issue that we're talking about now, which is whether the opinion created a new right. I would point out, under the law of this circuit, the Ashley decision in particular, there's a recognition that if a new Supreme Court case causes overruling of a lot of cases, that's a first good indication that it created a new right. That is precisely what happened after Mathis. Not just in the circuits that were, you know, recognized by the Supreme Court as having, you know, been on the wrong side of Mathis, but by others, including this one. And we cited in the reply the Haney case, which was the first time, so far as I can tell, following Mathis where this court reinterpreted earlier versions of an Illinois burglary statute and said previously, before Mathis, it was clear that this was something to which we would apply the modified categorical approach. And that stands to reason. It was quite similar to statutes the Supreme Court had considered, especially in Shepard and Nijhawan, as well as the hypothetical discussed in Taylor. Following Mathis, that interpretation could not stand. It was clear that, and this is an earlier version of the Illinois burglary statute, it was clear that it was a statute composed of multiple means, as opposed to multiple elements. And under the reasoning and the decision in Mathis, for that reason, the categorical approach had to apply. So that's the first big point I would say, is that there were a large number of opinions reversed, and this court is not the least of them. The second point is, and we argued this extensively, I think it's fair to say, especially in the reply brief, although it's discussed in the opening, Mathis, law before Mathis, as described by the Supreme Court, simply did not distinguish between means and elements for purposes of analyzing statutes. I actually agree with you on that. I mean, I read Mathis as creating a distinction that we hadn't been thinking of before. But, oh goodness, there are just so many reasons why that might not be enough to bring Mr. Hansen home, so to speak. First of all, that it does simply relate to the career offender guideline. It's not an ACCA case. Now, in terms of understanding the language, we analyze the two the same, but we know from Beckles that the consequences of miscategorizing somebody as a guidelines career offender are not the same as the consequences of misclassifying somebody as an armed career criminal, because the guidelines are advisory and all of that stuff. Now, the Supreme Court has come back again with a lot of cases saying, well, actually the guidelines are really important. They're important enough for ex post facto reasons. They're important enough for various other things. They anchor, they do this and that. So your hurdles are you've got to show that it's a new rule. You have to show that it matters, that it counts, even though it just deals with the guidelines. You actually also have to show that a statutory interpretation matter will support a certificate of appealability, or as you've argued, maybe we should just disregard that. But we did ask for briefing on that point. Any one of these things would be enough to defeat Mr. Hansen's claim. Well, Your Honor, let's take them one by one. So to start with the first one that you just mentioned there, it sounds to me like we've kind of discussed why Mathis would have created a new right, and that is our position. To get to your second point, which is about whether this is a cognizable claim on collateral review, the position that we argued extensively in the briefing is that miscategorization of someone as a career offender creates a miscarriage of justice. We think that the reasoning in this court's opinion in Narvaez demonstrates why that's so. Could I ask, though, whether that's the kind of inquiry we should make, in a sense, at the legal level, at the across-the-board level, or is the miscarriage of justice question something that's particular to a defendant? Because I'm going to tell you, if it's particular to a defendant, it seems to me as though had all of this come up at the original sentencing and Mr. Hansen had said, I'm not a career offender, third degree Kentucky, burglary isn't a qualifying crime, and the prescient district court had recognized that, the government had a bunch of other things in its back pocket that it could have come forward with that I think would have made Mr. Hansen a career offender. Your Honor, if I may address that point, the government says that that is so, that it has a number of other offenses that it could have used to support the enhancement or other things. I don't believe that's true, and let me say why I don't think so. In the district court, it was heavily disputed on grounds not related to this appeal whether Mr. Hansen should be classified as a career offender. This was whether it was all one continuous course of conduct? Exactly. That's exactly right. If the government were correct that it had all these other offenses that simply could have been taken out of its back pocket, as you said, to support the career offender enhancement, it is deeply confusing why they would then have relied on the one that was problematic and gone into court to argue that. Further, I think there's a lot of reason based on reviewing the PSR as well as the relevant statutes to think that the prior convictions that the government is talking about as ones that could have substituted for bases supporting the career offender enhancement would have been problematic. For example, in one of them, the record in the PSR simply says, there's nothing available about this. We don't have any information about the conviction. But that's the paragraph 59, 2005? Your Honor, I'd have to take a look, but that sounds— Only possession of a controlled substance, right? That sounds right to me. I'm not sure. Okay, but they've got three prior drug felonies. Yes. And this gets to a major concern that I have, a follow-up on Chief Judge Wood's question, which was the government, everybody seemed to agree in the plea agreement, had the option of going with a second 851 notice, right? Again, the government says that. Well, okay, I look at the PSR and I see three felony drug convictions, okay? And two under the law at the time are enough for a mandatory life sentence, right? And Mr. Hansen makes a deal. Government agrees to go with just one. It would be reasonable to treat this whole proceeding as a breach of the plea agreement, right? Well, Your Honor— Not getting the finality that Mr. Hansen promised. Your Honor, I would say two things about that. The first is, once again, just to wrap up this point about are these other offenses ones that can actually support either the career offender enhancement or the enhancement you're discussing, which I believe uses the same language for an offense to qualify. And I would simply say the same thing. You mentioned in the PSR there were these other offenses listed. Well, as in the district court, the probation officer who was writing the PSR did not rely on any of those other offenses to say the career offender enhancement is supported. And I think that that demonstrates that there may well have been problems with them. As to whether this proceeding is itself a breach of the plea agreement, I'm unaware of any case where this court has said the mere filing of an appeal has breached a plea agreement, and I'm not sure that I would read it that way. Well, the plea agreement itself provides that in the event of a breach, the government will not be bound and could go back and specifically include the filing of additional charges or sentencing enhancement notices. If you win here, is there a prospect that the case goes back to the district court? The government, relying on that provision, files a second 851 notice. Now, as I understand it, under the First Step Act, which presumably would then apply if he's resentenced today, the mandatory minimum with two 851 notices is 25 years, several years more than the sentence that he's challenging now. I don't know whether the government would do that, but I don't see a bar to doing so, particularly when they have lost the benefit of the bargain or much of it. Your Honor, I'm not entirely certain that I would agree with that. If this court does what we're asking it to, which is that it just said essentially there's an exception to the plea agreement that applies for miscarriages of justice, I would think that the rest of the plea agreement would still remain in force, which would preclude the government from going back and filing additional charges. Certainly that is what we would argue. We have not been hospitable to that approach, I have to say. We have said that plea agreements stand or fall as a whole because each piece contributes to each other piece. So I know I recall that you asked for that in your brief, but there are a lot of cases this court's decided that I can recall where we've said you can't just be excused from one part of the plea agreement that you don't like and have the rest stand. Your Honor, I think especially in the context of the miscarriage of justice exception that we talked about in the brief, and I would just emphasize that the government did not respond in any way to that argument in their briefing. There was no discussion in their brief or pushback about whether this fits within the miscarriage of justice exception where collateral attack or appellate waivers have been waived. I would point to the Lighthouse case where this court adopted the miscarriage of justice exception. What happened there was that there was an appeal, the court permitted the appeal only as to the amount of the fine, or I think it was a restitution order for the defendant, and it kept everything else in place and it sent the case back to the district court for a new decision just on that point. So I would say that in the line of cases that we're citing about... The mortgage fraud case? That's correct, Your Honor. Where, in essence, we had willing victims? That was the court's suggestion, yes. I was on that panel. It was a pretty unusual circumstance. Understood, Your Honor. And I am going to alert you that you're running low on time, so if you would like to reserve a little bit, this would be a good time to do it. Oh, okay. Thank you, Your Honor. Certainly. Mr. Kutchin. Your Honors, may it please the Court. My name is Jim Kutchin. I'm an assistant U.S. attorney, and I represent the government in this matter. Taking a few of the Court's questions first, the government has never argued that there were alternative basis for finding that this defendant was a queer offender. I think there's a misunderstanding on counsel's part about the differences between the 851 enhancement that could take this defendant to a mandatory life sentence and the queer offender. I don't think there's any doubt when you look at the record. In fact, the government argued or noted at sentencing that in return for the defendant's plea, it had specifically not filed on those additional drug convictions that would have made this a mandatory life case. So I think the Court was correct that saying that this case on these particular facts is a miscarriage of justice is a little bit difficult, where the defendant received a sentence of 22 months above the mandatory minimum of 22 years and could have been facing a mandatory life sentence. But the government here is in this very unattractive position of agreeing that the basis of this man's sentence is flawed, that third-degree Kentucky burglary was not correctly understood now that we've been enlightened by Mathis, whether it's a new rule, whether it's an old rule, or any other kind of rule. And the government's position is, tough luck, you're just going to have to spend the extra 22 years in prison because nobody handled your case properly. Well, Your Honor, I don't know that I would characterize as no one handled the case properly. Well, in hindsight, we know that. You've admitted it, everybody. But there's all kinds of errors that become clear in hindsight that don't allow for collateral review. That's certainly not a new position on the government or a new position for this Court. This Court has held time and time and time again that the standards for a direct appeal are different from what is cognizable on a collateral attack. So let me ask you, with that thought in mind, the backup position that Mr. Hansen's brief presents is a remand pursuant to United States against Curry to ask the district judge whether this error would have made any difference, not to tell the judge anything, but the judge has discretion, of course, within the confines of statutory maxima and minima. What about that thought? Well, if this were a direct appeal case and the issue was whether the error was harmless, perhaps that would be an appropriate thing to do. That's not this case. This case is about a conviction that was suffered in 2009 in a 2255 petition that was dismissed as untimely. So I don't believe that that is an appropriate relief. I'm not aware as I stand here of any cases similar to this in a similar posture in an appeal from a denial of a 2255 where the court has sanctioned or suggested that that would be an appropriate thing to do. So do you see any space between the decision whether Mathis is the kind of new rule that restarts the normal one year under 2255 and the equitable tolling argument that's also presented here? Because presumably equitable tolling covers something that isn't already covered in the statute. Indeed, there were some people before Holland was decided who thought there wasn't any equitable tolling under 2255 and, for that matter, 2244. Here we have a situation where certainly Mathis was a major event and people didn't expect it. And so that would be a way of getting beyond the timing problem that you've identified. The way to get beyond the certificate of appealability problem is just to say, as we often have, this is a gateway consideration. We've all invested a huge amount of time in this case. Maybe we should just go ahead and decide it. We have no jurisdictional bar to doing that. So then you could get to the curry point. You could say, well, you know, let's just see. Well, Your Honor, there's a lot there, so let me try to take that one piece at a time. First, this Court, I think, has made clear time and time again that this is not the kind of situation that equitable tolling applies to. The Court has said that clarifications or changes in substantive law do not constitute an extraordinary circumstance justifying equitable tolling. So I think the premise of the Court's question would be inconsistent with a longstanding circuit precedent. The government certainly hasn't challenged the Court's determination that certificates of appealability are not jurisdictional. Obviously, other circuits have disagreed. The government considered that, but there's really nothing new in the government's view since the Court had decided that to raise that issue. But what we don't have here is you posited the cases that said, well, we've invested a lot of time. That's in cases where the certificate of appealability was granted by the Court, not recognizing that it was granting one on the basis of a statutory claim rather than a constitutional claim, and then the government missed the opportunity to ask the Court to vacate it. Here we have something totally different where the Court, the way that I read Judge Brennan's order, knew full well that it was granting on a statutory question. It would be extraordinary indeed for the Court to say, we're aware that we are granting on a statutory question. We're going to order a briefing on that and on the substantive claims and then reach the substantive claims under the theory that, oh, well, we've already briefed it. That's a very different situation than the cases before. And I think when you look at Ramuno and I think it's Owens and some of those cases, the situation we have here is more akin to that, where the government has timely stood on its right. And whether it's jurisdictional, I would almost say it's akin, and in reading some of the Ramuno and some of the other cases, it's akin to a claims processing rule. If the government or the opposing party, which in these cases it will always be the government, stands on its right in a timely manner, then the Court, I think, has an obligation to enforce that. It's clear that's what Congress's will was. Certainly the government under this Court's precedent can waive that, but where it doesn't, I think the Court has an obligation to enforce it. In addition, we've touched around it, but there are so many procedural bars, as the Court suggested earlier. We've touched on the plea agreement waiver, but I just want to make clear the government's position that the plea agreement waiver fully controls in this situation. The claim that's being raised is within the ambit of that waiver. None of the arguments that the petitioner puts forward for avoiding that are meritorious. First off, the government didn't waive its ability. So why shouldn't the government have an obligation in this kind of situation, though, where there's a waiver of, as happens here, collateral review, to at a minimum write a letter to the district court or make a limited appearance in the district court saying, by the way, there's a plea waiver? Because the district court isn't supposed to scour the record and look up all the things and everything. It seems very wasteful for the government to be able to sit on its rights and then, once an appeal is filed, say, oh, by the way, there was an appeal waiver. Well, Your Honor, if that were the rule... Or a collateral review waiver. Excuse me, I'm sorry. I'm sorry. If that were the rule, the government would certainly follow that rule, but that's not the rule. I would point the court to the petition in this case. Actually, Document 1 and Attachment 1 to that is a letter that the district court sent to the government, which in that letter the district court advised the government no answer or other response of pleading is required unless the court orders otherwise. That's simply a reflection of Rule 5 of the rules governed. I understand that, but what I'm suggesting is that Rule 5 is a good rule for all sorts of 2255 petitions that come along. Maybe somebody, you know, maybe the government just doesn't see much merit in the petition, but this is a, what you're saying, is a fundamental jurisdictional flaw in the petition itself in that there is flat-out waiver of the ability to bring the 2255, and there's nothing to be done but for the court to say, oh, this happens to be a 2255 waiver case, out the door it goes. I don't have to do anything else. And so it seems to me the government might do everybody a big favor by raising that at the district court level instead of sitting on it until the appeal is filed. Well, Your Honor, I guess first saying that something would be a favor to someone is different than saying that it's required, and certainly if the court wants to introduce that as a requirement, it can. But when you read the rules together, the overriding, I think, theme of those rules is reducing the burden on everyone involved. And this has increased the burden, the way the government has handled this. Well, Your Honor, I'm not sure that I would agree with that because Rule 4 also requires the district court to do a preliminary review, which the court in this case did. But it did it with one hand tied behind its back because the government didn't call the collateral review waiver to its attention. Your Honor, it didn't because it has never been required to in the past. This court's cases or the district court's cases in the Southern District don't require the government to do that. But do you see what I'm saying? It's a different kind of response than a lot of ordinary responses to a 2255. Your Honor, I don't think that I would agree that it's different because the majority of cases resolved by plea agreements in our district and the majority of them, or almost all of them, have plea agreement waivers. So I don't think that it's a unique situation that you would find that a defendant challenging his sentence in the Southern District of Illinois likely has a plea agreement waiver in his file. It's a collateral review waiver. Actually, I think in some districts in this circuit, defendants are choosing blind pleas because they don't like the waivers. Your Honor, that may well be. I certainly haven't done a survey in the Southern District, but I'm not seeing that in the cases that I handle. I think there are still good reasons why defendants would do that. But again, we're getting, I think, away from the issue that the government handled this case just as it has handled every other case in the manner that was prescribed by the rules. I don't think there's any basis at all for this court to find that there was a waiver of the right to enforce the plea agreement. Again, if the court wants to change the rules going forward, that's its prerogative. I wouldn't suggest it, but it's certainly its prerogative to do. I'm not putting those words in your mouth. And, Your Honor, so we've addressed the timeliness issue. Again, I think it's worth noting that this court doesn't stand alone in Sotelo among the courts of appeal. In fact, every court of appeal that has addressed the issue has found that Mathis does not present a new right. I certainly understand where the court's coming from. Mathis has created not just work for the court, it's created work for the government. But you certainly have to take the court at its face value, the Supreme Court at its word at face value. It said it wasn't doing anything new, and the courts of appeals that have rejected petitions under 2255F3 have done just that. Suppose they had said that in Gideon. We're not doing anything new. The Sixth Amendment's been here all along. Right. Right. At some point, common sense has to intervene. Sure, Your Honor. I don't think I would put Mathis quite on par with Gideon, but I understand the court's point. So, counsel, I guess it would be helpful to me if you could articulate what you see is the difference between the plain error standards that the Supreme Court has been applying to guideline errors in Rosales and Bribolina, and the line that we've drawn in Hawkins and Coleman regarding advisory guidelines, errors not being challengeable or cognizable on collateral review. Well, Your Honor, I think you have to start with the Supreme Court's longstanding precedent and admonition that the rules on direct appeal and collateral attack are just different, that later developments that don't affect the lawfulness of the judgment itself are not cognizable. And that was in a Donzio 1979 case, and the court has built on that over and over and over again. So, on direct appeal under the plain error, the defendant has to show a reasonable probability that, but for the error, the outcome of the proceeding would have been different. I think this court and every court that's looked at it is a far different standard than a miscarriage of justice. A miscarriage of justice assumes that the result might have been different. The miscarriage of justice, at least in this court, I can't speak for the rest of the circuits, but my review of this court's precedent, talk about things like an illegal sentence in the ACCA situation where a sentence above the statutory maximum has been imposed. And I think this court, you know, in Narvez, it, I won't say struggled, but its interpretation of the mandatory sentencing guidelines was that it had the effect of a statute and that the court was bound to do that. Those are the cases in which we see a miscarriage of justice or where later developments mean the defendant is actually innocent of the offense of which he was convicted. We have a far different situation with guidelines where by definition the defendant is sentenced within the statutory maximum of the offense that he's done. And really, if you think about it, the logical consequences of what the defendant or the petitioner is asking this court to do, what's the standard? Does it apply just to career offenders if there's an error in the career offender range? Does it apply to a two-level adjustment under, you know, 2B1.1? And certainly everyone thinks that career offender sentences are so much different from the range that would have applied had they not been a career offender. That's certainly not the case in this case. There are certainly fraud cases where the amount of loss, you know, can jump someone up 12 levels under the guidelines. So the rule essentially that the defendant is asking the court to adopt would mean that all guideline errors, if they're in retrospect, if there was a guideline error made, that those are now cognizable. I don't think the court wants to go down that road and I certainly don't think there's any basis for the court to overrule its precedent. Thank you. All right, thank you very much. Mr. Dumoulin. Thank you, Your Honor. I'll address briefly some of the issues the government raised. The first one I would like to mention is just about the certificate of appealability, where we would emphasize that the best option here, I think, is to defer this to a different case. I would emphasize in particular for the court the Gomez and the Medellin decisions that we cited in the briefs, and I think what that demonstrates is if the government's position is correct, that only constitutional mistakes can be grounds for a certificate of appealability, it is going to cut off not just review of statutory claims but also of treaty-based claims, and in some cases that would create a very serious problem, as I think it did in those. But, you know, the problem, particularly in today's world, is that that word constitutional appears in the statute, and it's really a big lift to ask us to say, even though Congress said constitutional, somehow they didn't mean it. Well, Your Honor, I think that based on the structure and the statute read as a whole, that it can be interpreted in the way we're suggesting. If you had been making this argument around the time Webster was decided, I think you would have had some mileage, but it's a tough one. But anyway, why don't you go on to your other points. Okay, very briefly. As far as the waiver and the government's lack of response in the district court, I think that the government says it responded in the manner prescribed by the rules. I.e., not at all. Exactly. As Your Honor said, the rules say that the government need not respond. It doesn't say that the government doesn't have to respond. What I would further point out is that this type of case— The difference is you need not and doesn't have to. Oh, excuse me. I think you mean the government isn't forbidden from responding. That is what I mean, yes. It's just not compelled. I apologize, Your Honor. I'm confused. I'm sitting here. Judge Bauer is hanging on your every word. I wouldn't want to do that. I think that what I would also emphasize is that this type of case where the district court does not require a response from the government and then the court of appeals, because it views the petition as being wholly meritless, and then the court of appeals says, actually there's quite a lot here that needs to be discussed, it's a very rare kind of case. And we would emphasize that in those types of cases, saying that the appeal is just going to go forward because it's the most economical at that point would be a very reasonable rule indeed. If we were to seize upon the collateral waiver in the plea agreement, you said you'd like a factual hearing in the district court.  Your Honor, our argument at this stage is not that we have particular facts that we're presenting to say that the waiver, that the plea agreement should be disregarded or the collateral attack portion. At this point, we're saying we would be prejudiced by having to go back and do a factual hearing given the passage of time in this case. It's been, I don't recall exactly. I've got to say, having the petitioner complain about the passage of time here is a little ironic. I understand that, Your Honor, but our point is that the government chose not to respond in the district court. It had the option to do so. That would have been the appropriate time for those points to be raised. Thank you. Could I ask you to address the point that the government was making near the end of its presentation about, in essence, just how broad a rule you are arguing for with respect to the cognizability of guideline errors on collateral challenges. In particular, I mean, we're familiar with the sequence of Narvaez, Hawkins, Coleman, and where we are. I think I understand your argument based on more recent Supreme Court decisions, but it would be helpful for me to understand how broad a rule you think you're making. Happy to address that. The only thing that we are asking the court to hold today is that a misapplication of the career offender enhancement. Okay, career offender. Okay, I get it. That's a big jump, but as the government points out, there are a lot of big jumps, and I don't think the rule you could actually be limited to just big jumps in the guidelines, could it? Well, Your Honor, our position is. Hawkins, I mean, talk about a big jump. This is a small jump compared to what has happened in some cases. Your Honor, we would focus on the reasoning of Narvaez, which was not at all, as I read it to be about the size of the jump as an absolute. It's about the fact that this is a guideline that changes the kind of the systemic conditions of the sentencing. It says to the court that somebody should be viewed in his entirety as a different type of defendant than somebody else who commits the same crime. Now, the government can talk about, you know, a two point enhancement here or, or something that maybe is a big jump as far as something else. I think that the distinctiveness of the career offender guideline was in, in the words of the Narvaez court, it branded the petitioner as a malefactor deserving of far greater punishment because he belongs in a special category of repeat violent offenders. And that is, that is a distinction in kind, I would say from other types of enhancements. So we, so to get back to your original question, we were simply asking the court to say, because of the distinctiveness of this career offender enhancement, that a misapplication of it is a miscarriage of justice without going to whether other, certainly we're not asking the court to add, to hold that any mistake at sentencing is cognizable on collateral review. All right. I think we're, unless you have anything else, I think we have to call it quits at that. I understand you were appointed by the court to take this case. We appreciate your efforts very much. Thank you. For the court and for your client. Thanks as well to the government. We will take the case under advisement.